# FOR PUBLICATION



**FILED & ENTERED**

**JUL 17 2020**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY hawkinso DEPUTY CLERK**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re: | Case No.: 6:19-bk-11255-WJ |
| MARISA MORENO, | CHAPTER 13 |
| Debtor. | **MEMORANDUM OF DECISION** |

      Bankruptcy law provides that if a husband and wife who own community assets file separate bankruptcy cases, all community assets become property of the bankruptcy estate of the spouse who files for bankruptcy first. If the two bankruptcy cases of the married individuals overlap, a related question of law arises. If the bankruptcy case of the spouse who filed first concludes before the second bankruptcy case of the other spouse concludes, do the community assets that are properly disclosed but not administered in the first case automatically transfer to the bankruptcy estate in the second case? For the following reasons, the Court concludes that the assets do transfer by operation of law from one bankruptcy estate to the other.

### I. Background

      Jose Ramirez and Marisa Moreno have been married for approximately twenty-five years. In December of 2018, Mr. Ramirez filed his own chapter 7 bankruptcy case without his wife. Two months later, in February of 2019, Marisa Moreno ("Debtor") filed this chapter 13 bankruptcy case without her husband. On the date that the Debtor filed this chapter 13 case, the chapter 7 bankruptcy case of Mr. Ramirez was still pending. Mr. Ramirez had not received a chapter 7 discharge and his case had not closed. Thus, the husband and wife had simultaneous bankruptcy cases pending: one in chapter 7 and one in chapter 13.

      Given the overlapping nature of the two bankruptcy cases, the chapter 13 trustee ("Trustee") asked the Court to deny confirmation of the chapter 13 plan proposed by the Debtor and dismiss this case. For the following reasons, the Court will grant the former and deny the later.

### II. Community Property Initially Transferred Into the First Bankruptcy Estate.

      The Debtor drives a 2018 Toyota Camry. The vehicle is a community property asset and the Debtor listed it as such on her Schedule A/B.[1] Toyota Motor Credit Corporation ("TMCC") has a lien against the Camry in the approximate amount of $21,000 and the Debtor listed Toyota as a secured creditor on Schedule D. Under the terms of her proposed chapter 13 plan, the Debtor

---

[1] There is no dispute that the Camry constitutes community property. Mr. Ramirez listed the Camry as community property on the Schedule A/B he filed in his bankruptcy case and the Debtor did likewise in her case.

intends to treat the claim of TMCC as a secured claim and modify that secured claim.[2] Unfortunately, this treatment is problematic because the Camry was not property of the bankruptcy estate on the petition date or at the time the Debtor proposed her chapter 13 plan.

Married couples have the right to file a joint bankruptcy case, but they are not required to do so. When they elect to file separate bankruptcy cases, such cases can present unique problems in states governed by community property laws.[3] Section 541(a)(2) of the Bankruptcy Code provides that property of a bankruptcy estate includes all community property of the debtor and the debtor's spouse.[4]

This means that when a married couple files separate bankruptcy cases, all of their community property becomes property of the bankruptcy estate in the case filed first. Separate bankruptcy estates arise in both cases but the bankruptcy estate in the case filed second does not include any community property because all of it passed into the first bankruptcy estate. The

---

[2] In the "Debtor's Brief In Support of Confirmation" filed on April 11, 2019 [docket #21], the Debtor states on page 2, lines 3-4 that "[t]he purpose of this case is to reorganize her debts, including her car loan" and that comment is consistent with her proposed chapter 13 plan [docket #2] which seeks to modify the secured debt of TMCC in at least three ways. First, in Class 3B of the proposed chapter 13 plan, the Debtor proposes to reduce the interest rate to be paid to TMCC to 4% instead of the rate of 6.25% set forth in paragraph 9 on page 2 on the proof of claim of TMCC filed on March 27, 2019 [claim #7-1]. Second, under the terms of the lending agreement attached to the proof of claim, TMCC is entitled to payment in full by December 31, 2023. Under the terms of the proposed plan, TMCC would not be paid in full until the Debtor pays the 60th plan payment which is due on February 19, 2024. Third, for unknown reasons, the Debtor's plan proposes to increase the amount of the monthly payment from the amount in the agreement ($356.97) to, instead, $385.88. The Court assumes that this change is necessary to cure a default of some sort not reflected in the proof of claim because the change in the amount of the payment is not otherwise explained by the parties.

[3] In most of the caselaw cited in this decision, married couples have tended to file separate bankruptcy cases after they have separated and have initiated divorce proceedings (or plan to do so). That does not appear to be true in this case. The record in this case reflects no marital discord between the Debtor and Mr. Ramirez and they have been married for approximately twenty-five years. Instead, it appears that the Debtor filed a chapter 7 bankruptcy case in 2013 and obtained a discharge. For this reason, she cannot file another chapter 7 bankruptcy case and obtain a discharge until 2021. See 11 U.S.C. § 727(a)(8). This appears to be the reason why the Debtor did not join in her husband's chapter 7 bankruptcy case and, instead, filed a separate chapter 13 case.

[4] Dumas v. Mantle (In re Mantle), 153 F.3d 1082, 1085 (9th Cir. 1998) ("For purposes of § 541(a)(2), all community property not yet divided by a state court at the time of the bankruptcy filing is property of the bankruptcy estate."); In re DeHaan, 275 B.R. 375, 379 (Bankr. D. Idaho 2002) (holding that pursuant to section 541(a)(2), the bankruptcy estate includes all community property whenever "one spouse . . . chooses to file a petition for relief."); In re Kido, 142 B.R. 924, 925 (Bankr. D. Idaho 1991) ("As has been previously noted in this case, where one party to the community files a petition for relief, the provisions of 11 U.S.C. § 541(a)(2) cause the community property interests of both parties, or, the entire community, to become property of the estate, at least, in Idaho where the community property is under the control and management of both parties."); In re Miller, 167 B.R. 202, 207 (Bankr. C.D. Cal. 1994) ("[T]he primary purpose of Section 541(a)(2) is to include as property of the estate all community property of the debtor and the debtor's spouse . . . .").

community property of a couple flows into the bankruptcy estate of the spouse who arrives at the bankruptcy court first.

For example, the decision in Texaco, Inc. v. Bartlett (In re Bartlett), 24 B.R. 605 (9th Cir. BAP 1982) was one of the first published decisions to address this issue of law. In that case, a husband filed a separate bankruptcy case in 1979 and then, two years later, his wife filed her own bankruptcy case. Litigation arose regarding a homestead exemption asserted in both cases and the Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") held (among other things) that, pursuant to section 541(a)(2), "virtually all of a couple's California community property becomes part of the estate of the first spouse to file a petition." Id. at 608. As a result, the BAP concluded that no potential for misuse of the homestead exemption existed "because the first filing spouse's estate contains the couple's entire interest in the property." Id.; see also In re Maynard, 264 B.R. 209, 214 (9th Cir. BAP 2001) (holding that, pursuant to section 541(a)(2), "the community property of both spouses becomes property of the estate when one spouse files a bankruptcy petition.").

A similar ruling occurred in Hopkins v. Idaho State University Credit Union (In re Herter), 456 B.R. 455, 465 (Bankr. D. Idaho 2011), affirmed, 2013 U.S. Dist. LEXIS 20155 (D. Idaho 2013). In Herter, a husband and wife purchased a home while married and they agreed the home constituted community property. Six years later, they decided to divorce each other and both filed separate chapter 7 bankruptcy cases. The husband filed his case twelve days before his wife.

Because the state court had not yet divided community property, the bankruptcy court in Herter concluded that the bankruptcy estate in the husband's case acquired all community property of the couple. No community property passed into the bankruptcy estate of the wife because she filed her bankruptcy case twelve days after her estranged husband. The court specifically held that when "two spouses file asynchronous bankruptcy petitions in a community property state, the couple's community property interests pass to the first-spouse-to-file's bankruptcy estate; all that enters the second-spouse-to-file's bankruptcy estate are her separate property interests." Id. at 468. On appeal, the district court affirmed. Herter, 2013 U.S. Dist. LEXIS 20155, *6-*7 ("Here, David filed his bankruptcy petition before Nichole did and, at the time he filed, the couple's divorce decree had not been entered and their community-property home had not been sold. Thus, the

1   home remained community property and the entire home was brought into David's bankruptcy

2   estate. Nichole's estate, therefore, does not include any part of the home." (citations omitted)).

3   Likewise, in In re Pixler, 2002 Bankr. LEXIS 1926 (Bankr. D. Idaho 2002), a husband and

4   wife initiated divorce proceedings. During that process, the husband filed a separate bankruptcy

5   case without consulting with his estranged wife. The husband listed all community property as

6   property of the bankruptcy estate in his case including the vehicle driven by his wife but he did not

7   assert an exemption in her vehicle. Later, the wife filed her own bankruptcy case and listed her

8   vehicle as an asset and claimed an exemption. The trustee in the husband's bankruptcy case

9   objected to the exemption claimed by the wife in her vehicle and the court sustained the objection.

10  The bankruptcy court held that the "Bankruptcy Code vests all of that community property

11  in the bankruptcy estate of either spouse who files a petition." Id. at *8. This meant that the wife

12  could not claim her vehicle as "exempt in her bankruptcy case because all of her interest in the

13  vehicle passed to [her husband's] bankruptcy estate prior to the date she filed her petition. In other

14  words, [the wife] had no remaining interest in the Subaru to exempt when she filed." Id. at *9.

15  Although the court found the result "harsh" which left the wife "in a jam", it was bound by the

16  statute. Id. at *8-*10 ("[I]t was for Congress, not the Court, to weigh whether the burdens visited

17  upon a non-filing spouse were proportionate to the benefits when it acted to include community

18  property in the 'first-filer's' bankruptcy estate. There is no room for the Court to vary the clear

19  meaning of the statutes based on the perceived equities of this case.").

20  The decision in In re Homan, 112 B.R. 356 (9th Cir. BAP 1989) held similarly. In Homan,

21  a husband and wife purchased land while married which constituted community property. After

22  they separated, the husband filed a chapter 7 case and listed the land as an asset but claimed no

23  exemption. His estranged wife then sought to assert an exemption for the land (where she resided)

24  in the husband's bankruptcy case. That effort failed.

25  The BAP held that all community property came into the bankruptcy estate of the husband

26  including the land. The BAP also held that a nondebtor spouse could not assert any exemption that

27  was inconsistent with the exemptions asserted by the debtor. Thus, the court found that the land

28  was entirely property of the bankruptcy estate and not subject to any exemption.

1     In In re Bauer, 2005 Bankr. LEXIS 3033 (Bankr. D. Idaho 2005), a husband and wife filed
2 separate chapter 7 bankruptcy cases. The husband filed his case eleven minutes before the wife
3 and, as a result, the court held (among other things) that all community property of both spouses
4 became property of the bankruptcy estate in the husband's case only. Because the wife filed her
5 case second, the bankruptcy estate in her case did not include any community property. Id. at *9-
6 *10 (stating that "all community property of the spouses becomes property of the bankruptcy estate
7 of the first spouse to file a petition."). As a consequence, the wife lacked the ability to assert a
8 homestead exemption in property she contended was community property because her bankruptcy
9 estate did not include any community property. All of it passed into her husband's case because it
10 was filed first.

11     Thus, well-settled caselaw provides that once a married person files a bankruptcy case in a
12 community property jurisdiction, the other spouse (who either never files a bankruptcy case or files
13 one later) no longer owns the community property. See, e.g., Griffin v. Allstate Insurance
14 Company, 920 F. Supp. 127 (C.D. Cal. 1996) (following Bartlett and stating that "[c]ommunity
15 property assets and their proceeds become property of the bankruptcy estate of the first spouse to
16 file a bankruptcy petition.")[5]; Bostanian v. Liberty Savings Bank, 52 Cal. App. 4th 1075, 1084, n.7
17 (Cal. Ct. App. 1997) (finding that a wife who did not file a bankruptcy case lacked standing to
18 pursue litigation based on a community claim because her husband did file a bankruptcy case and
19 all community claims constituted property of the bankruptcy estate in that case)[6]; Midi Music

---

[5] In Griffin, a husband and wife sued their insurance company for failing to cover a loss. The claims against the insurance company constituted community property and, after filing the lawsuit, the husband filed a bankruptcy case (but his wife did not). Therefore, the district court concluded that both the husband and the wife lacked standing to continue to prosecute the litigation because all community property became property of the husband's bankruptcy estate and only a trustee has standing to pursue claims of a bankruptcy estate. Griffin, 920 F. Supp. at 130. The causes of action arose prior to the husband filing his bankruptcy case and, therefore, pursuant to 11 U.S.C. § 541, the causes of action became "part of his bankruptcy estate" which meant the husband no longer had standing to pursue them. Id. ("Because the bankruptcy trustee has not abandoned the claim to [the husband], he is not the real party in interest and does not have standing to sue."). As to the wife, the court held that while she did not file for bankruptcy herself, she no longer had standing either because the claims in the litigation were community claims that belonged to her husband's bankruptcy estate. Id. ("Nor does Deborah Griffin have standing to sue. The Policy was community property because the Griffins paid the premiums with community funds. Community property assets and their proceeds become part of the bankruptcy estate of the first spouse to file a bankruptcy petition." (citations omitted)).

[6] In Bostanian, a husband and wife owned their home as community property but they lost the home after a foreclosure sale. The couple then sued the foreclosing lender claiming the sale was wrongful. The husband (but not the wife) had filed a chapter 11 bankruptcy case which converted to chapter 7. As a result, the defendant claimed that

Center, Inc. v. Smith, 140 B.R. 904, 907 (Bankr. D.N.M. 1992) (holding that all community property assets of a couple flowed into the bankruptcy estate of the spouse who filed for bankruptcy first).

Accordingly, when Mr. Ramirez filed his bankruptcy case in December of 2018, all community property assets of Mr. Ramirez and the Debtor, including the Camry, passed into the bankruptcy estate in his case. The Debtor no longer owned the Camry once Mr. Ramirez filed his bankruptcy case. Therefore, when she filed her own chapter 13 case two months later, the Camry did not become an asset of her bankruptcy estate. Likewise, the Camry was not property of this chapter 13 bankruptcy case when the Debtor proposed her current chapter 13 plan.

Moreover, if the Camry is not property of the bankruptcy estate then TMCC has no allowed secured claim.[7] And if TMCC has no allowed secured claim, then the Court cannot confirm the Debtor's chapter 13 plan which proposes to modify that allowed secured claim. Thus, the Debtor's plan cannot be confirmed because the Camry was not property of the bankruptcy estate at the time the Debtor filed the case or proposed the plan. For this reason, the Court must deny confirmation of the pending chapter 13 plan. However, that does not fully resolve the issues in this case.

---

both the husband and wife lacked standing to pursue the action for wrongful foreclosure and the California Court of Appeals agreed. Bostanian, 52 Cal. App. 4th at 1084, n.7. The Court held that the cause of action constituted a community claim, which was property of the bankruptcy estate of the husband. Therefore, only the chapter 7 trustee could pursue the claim and not even the wife (who never filed for bankruptcy) had any standing to pursue the claim. Id. The entire community claim belonged to the bankruptcy estate alone.

[7] See IRS v. Snyder, 343 F.3d 1171 (9th Cir. 2003). Pursuant to 11 U.S.C. § 506(a), an allowed secured claim exists only to the extent the lien encumbers property "in which the estate has an interest . . . ." If the bankruptcy estate does not have any interest in the property, then no secured claim exists. Id. at 1178 ("Section 506(a) provides that in order for a claim to be secured in bankruptcy, it must be secured by a lien on 'property in which the estate has an interest.'"). In Snyder, the Ninth Circuit held that the IRS did not have an allowed secured claim in a bankruptcy case because its lien did not attach to property of the bankruptcy estate. Because the collateral of the IRS (an ERISA qualified plan) did not become property of the bankruptcy estate, no allowed secured claim arose. To be sure, the IRS retained its lien rights outside of bankruptcy even though no allowed secured claim existed in the bankruptcy case. Id. at 1179 ("Although exclusion of Snyder's interest in the plan from the bankruptcy estate precludes the IRS from attaining secured status in the bankruptcy proceeding, the IRS's liens against Snyder's interest are not extinguished or otherwise affected. The liens continue to exist, but outside of bankruptcy."); see also, In re Veneziale, 267 B.R. 695, 701 (Bankr. E.D. Pa. 2001) (holding that the bankruptcy estate's interest in certain real property was limited to only the debtor's pre-petition one-half interest in that property and, therefore, the allowed secured claim of a lender with respect to that property was limited to that one-half interest in the property).

### III. Community Property Later Transferred Into This Bankruptcy Estate.

Although in rare instances bankruptcy cases can feel endless, they are not (in fact) interminable. Virtually all bankruptcy cases conclude at some point. Indeed, the chapter 7 bankruptcy case of Mr. Ramirez concluded quite quickly in the ordinary course of business. Mr. Ramirez filed his bankruptcy case in December of 2018 and, thereafter, the chapter 7 trustee filed a no-asset report. Mr. Ramirez received his discharge a few weeks later and the clerk of the Court closed his case on April 3, 2019. The entire matter lasted less than four months, which is a fairly common result for no-asset chapter 7 cases.

So what happened to the Camry on April 3, 2019 when the case closed? The Debtor had filed her case two months earlier and it remained pending. Who owned the Camry when the bankruptcy case of Mr. Ramirez closed?

Section 554(c) provides initial guidance in answering this question and states that "(c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." Under this provision, any properly disclosed asset in a bankruptcy case reverts back to the debtor when the case closes if the trustee does not sell or otherwise administer the asset. In the case of Mr. Ramirez, he properly listed the Camry on his schedules as a community property asset that was overencumbered. Therefore, his chapter 7 trustee did not administer it and, when the case concluded, it reverted back to the same owners with the same interests that existed prior to the filing of the bankruptcy case.

When the case closed, the Camry was no longer property of the bankruptcy estate of Mr. Ramirez but, instead, ownership reverted back to Mr. Ramirez and the Debtor jointly as a community property asset.[8] At that time (April 3, 2019), the Debtor had already commenced her

---

[8] Although section 554(c) states that an asset reverts back to the "debtor" at the end of a case, no party in this case contends that Mr. Ramirez received the Camry back at the end of his bankruptcy case free and clear of the community property ownership interest of the Debtor. Section 554(c) is not a mechanism by which one spouse can race to a bankruptcy court, file a separate bankruptcy case into which all community property flows and then, at the end of the case, reclaim all those assets as assets of the debtor alone (free and clear of the community property interests of the non-filing spouse). No known court has allowed the purging of co-ownership interests in this manner.

To be sure, section 554(c) could have been drafted a bit more clearly. Section 349(b)(3) provides better language when a case is dismissed because it states that dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." A better drafted

1    bankruptcy case and, under well-settled law, the assets of a bankruptcy estate are determined on the

2    petition date, not later.[9]  Indeed, section 541(a)(2) states that a bankruptcy estate includes

3    community property owned by a debtor (or a debtor's spouse) "as of the commencement of the

4    case."  Under this unambiguous language, the Camry was not included in the Debtor's bankruptcy

5    estate on the petition date because neither the Debtor nor her husband owned the Camry on the

6    petition date.  Instead, it was (at that time) an asset in the bankruptcy estate of Mr. Ramirez.

7        However, there are two independent reasons to conclude that the Camry automatically

8    transferred into the bankruptcy estate of the Debtor when the bankruptcy case of her husband

9    closed.  First, when Mr. Ramirez filed his bankruptcy case, he and the Debtor were entitled to

10   receive all unadministered community property (including the Camry) once the case closed.  As set

11   forth in section 554(c), all property that is properly scheduled and unadministered reverts back to

---

version of section 554(c) would track this language.  Nevertheless, on this issue, courts have (in effect) construed section 554(c) in the same manner as section 349(b)(3).  Closing of a case under section 554(c) does not extinguish any ownership interests.  Rather, it just returns property back to the parties who owned the property immediately prior to the commencement of the case.  Section 554(c) is not a tool for a debtor to strip away all community property rights of a spouse who did not join in the bankruptcy case.  Otherwise, great mischief would result.

A debtor tried this tactic (and failed) in Hopkins v. Idaho State University Credit Union (In re Herter), 456 B.R. 455, 465 (Bankr. D. Idaho 2011), affirmed, 2013 U.S. Dist. LEXIS 20155 (D. Idaho 2013).  In Herter, a husband and wife purchased a home while married and they agreed the home constituted community property.  Six years later, they decided to divorce each other and both filed separate chapter 7 bankruptcy cases.  The husband filed his case twelve days before his wife and he claimed the home as exempt.  The home passed through the husband's bankruptcy case without being administered by the trustee.  When the case closed, the husband argued that "under Bankruptcy Code § 554(c), unadministered property is abandoned 'to the debtor' when a bankruptcy case is closed."  2013 U.S. Dist. LEXIS 20155 *7.  Thus the husband argued that when his case closed, he received all of the property – including his wife's interest in the home.  Whereas they had both jointly owned the property as community property prior to his bankruptcy case, he argued he received 100% of the property interest at the end of the case.  In effect, he believed the bankruptcy case stripped his wife of her community property interest.

The district court, however, directly addressed and rejected this argument stating: "But if this view were accepted, David would get more than he had when he filed bankruptcy.  The more logical result is that David got what he had immediately before he filed his bankruptcy petition – his share of the community property.  As the Ninth Circuit has explained, '[u]pon abandonment, the debtor's interest in the property is restored nunc pro tunc as of the filing of the bankruptcy petition.' Catalano v. Comm'r, 279 F.3d 682, 685 (9th Cir. 2002); see also Brown v. O'Keefe, 300 U.S. 598, 602-03, 57 S. Ct. 543, 81 L. Ed. 827 (1937) (title to assets abandoned by the trustee passed to the debtor as if no bankruptcy had been filed)." Herter, 2013 U.S. Dist. LEXIS 20155 *7-*8.

[9] Cisneros v. Kim (In re Kim), 257 B.R. 680, 689 (9th Cir. BAP 2000), affirmed, 35 Fed.Appx. 592 (9th Cir. 2002) (holding that "the petition date is the relevant date for determining whether property is property of the estate."); First Federal Bank of California v. Cogar (In re Cogar), 210 B.R. 803, 811 (9th Cir. BAP 1997) (holding that property acquired after the petition date is not property of the estate and stating that the property in question "would be after-acquired property.  By definition, this after-acquired property would not be property of the estate, as determined at the time of the bankruptcy filing."); Klein v. Chappell (In re Chappell), 373 B.R. 73, 76 (9th Cir. BAP 2007) ("We are guided by basic principles of bankruptcy law.  Upon the commencement of a voluntary chapter 7 case, all of a debtor's legal and equitable interests in property on that date become property of the bankruptcy estate. § 541(a)."); United States v. Whiting Pools, Inc., 462 U.S. 198, 203 (1983) ("Section 541(a)(1) defines the 'estate' as 'comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case.'").

the original owners once a bankruptcy concludes. Under section 554(c), during the pendency of the bankruptcy case of Mr. Ramirez, he and the Debtor had the right to receive back (at the end of the case) all exempt assets, overencumbered assets and any other assets which the trustee failed to administer.

This is a well-known feature of bankruptcy law. Congress designed the bankruptcy estate under section 541(a) to be very broad and to sweep in all the assets of a debtor (including community property).[10] But at the end when the case closes, all properly disclosed and unadministered property flows out of the estate and back to the original owners. Section 349(b)(3) contains a similar rule in dismissed cases.

Section 554(c) and section 349(b)(3) create property rights. Whereas section 541(a) deprives debtors and their spouses of all community property at the beginning of a bankruptcy case, sections 554(c) and 349(b)(3) return most (if not all) of those assets at the end of the case. These property rights are contingent and reversionary in nature. The right of a debtor or spouse to receive community property out of a bankruptcy estate that closes under section 554(c) arises if the property is (1) properly disclosed and (2) not administered by the trustee (because it was exempt, overencumbered or some other reason).

Thus, when Mr. Ramirez filed his bankruptcy case, the Debtor could watch his bankruptcy case knowing that she had a reversionary property right to receive the Camry back as community property. This property right in favor of the Debtor arose immediately upon the filing of her husband's chapter 7 case. The moment Mr. Ramirez filed his chapter 7 case, the Debtor lost all ownership interest in the Camry (because it passed into his bankruptcy estate) but section 554(c)

---

[10] United States v. Whiting Pools, Inc., 462 U.S. 198, 204-205 (1983) (holding that "Congress intended a broad range of property to be included in the estate. The statutory language reflects this view of the scope of the estate. As noted above, § 541(a)(1) provides that the 'estate is comprised of all the following property, wherever located: . . . all legal or equitable interests of the debtor in property as of the commencement of the case.' 11 U.S.C. § 541(a)(1) (1976 ed. Supp.V). The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad.'"); Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 352 (1985) ("The powers and duties of a bankruptcy trustee are extensive. Upon the commencement of a case in bankruptcy, all corporate property passes to an estate represented by the trustee. 11 U.S.C. § 323, 541."); Hillis Motors v. Hawaii Automobile Dealers' Assoc., 997 F.2d 581, 585 (9th Cir. 1993) ("The commencement of a case in bankruptcy creates an 'estate', which contains all of the debtor's interests (whether legal or equitable) in property, tangible or intangible."); Klein v. Chappell (In re Chappell), 373 B.R. 73, 76 (9th Cir. BAP 2007) ("We are guided by basic principles of bankruptcy law. Upon the commencement of a voluntary chapter 7 case, all of a debtor's legal and equitable interests in property on that date become property of the bankruptcy estate. § 541(a).").

gave her a new property right – a right created under bankruptcy law the moment Mr. Ramirez filed his case – to receive the Camry back when her husband's case concluded.

Then, two months later, the Debtor filed her chapter 13 case while she was waiting for her husband's case to conclude. At the time she filed her chapter 13 case, she still had a reversionary right to all community property that was disclosed but unadministered in her husband's case. Upon the filing of her own bankruptcy case, that reversionary right to property became an asset of the bankruptcy estate in her own bankruptcy case. Pursuant to section 541(a), on the petition date, the property of the Debtor's bankruptcy estate included her right to receive community property that would later flow out of her husband's bankruptcy case when it closed in the future.

So when the husband's case concluded two months later and the Camry flowed out of the bankruptcy estate of Mr. Ramirez by virtue of section 554(c), it immediately transferred into the bankruptcy estate of the Debtor. The Camry and all community property that flowed out of the bankruptcy estate of Mr. Ramirez by virtue of section 554(c) were proceeds of the reversionary property right which instantly became property of the bankruptcy estate of the Debtor pursuant to 11 U.S.C. §§ 541(a)(6) & (7). And because section 541(a) applies to all bankruptcy cases, it did not matter whether the Debtor filed a chapter 7 or chapter 13 case. Under all chapters, her right to receive community property out of her husband's bankruptcy case became property of her own bankruptcy case.

In this instance, however, she did file a chapter 13 bankruptcy case which provides a second independent basis for concluding that the community property assets of the couple transferred by operation of law from one bankruptcy estate to the other. Section 1306(a)(1) applies in chapter 13 cases and provides that the bankruptcy estate in a chapter 13 case includes all property specified in section 541 as of the petition date but, in addition, includes all such property "that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11 or 12 of this title, whichever occurs first . . . ." This provision substantially expands the scope of the bankruptcy estate in a chapter 13 case.

For example, pursuant to section 541(a)(5), property of a bankruptcy estate in a chapter 7 case includes an inheritance only when debtors become entitled to the inheritance prior to the filing

of the bankruptcy case or within 180 day after the petition date.  In chapter 13 cases, however, the 180 day period is removed.  Pursuant to section 1306(a)(1), all inheritances arising at any time during a chapter 13 case (prior to the dismissal, conversion or closing of the case) constitute property of the bankruptcy estate.[11]

Likewise, in a chapter 7 case, the bankruptcy estate includes all proceeds of life insurance policies if they accrue prior to filing the bankruptcy case or within 180 days thereafter.  In chapter 13 cases, life insurance proceeds received any time during a chapter 13 case (prior to the dismissal, conversion or closing of the case) constitute property of the bankruptcy estate.[12]

Similarly, the Debtor acquired (or re-acquired) the Camry and her community property assets on April 3, 2019 when the bankruptcy case of her husband closed.  Because, at that time, her pending bankruptcy case had already commenced, those assets immediately flowed into her bankruptcy case by operation of law.[13]  While section 541(a) did not sweep the Camry and her other community property assets into her bankruptcy estate on her petition date, section 1306(a)(1)

---

[11] Dale v. Maney (In re Dale), 505 B.R. 8, 13 (9th Cir. BAP 2014) (holding that based on section 1306(a)(1) "an inheritance received by chapter 13 debtors more than 180 days following the petition date but before confirmation of a chapter 13 plan and before the case is closed, dismissed or converted is property of the debtors' bankruptcy estate.").  An "overwhelming majority of courts" have reached this conclusion. Carroll v. Logan, 735 F.3d 147, 151 (4th Cir. 2013) (holding that an inheritance arising in a chapter 13 case more than 180 days after the petition date constitutes property of the bankruptcy estate based on section 1306(a) and referring to the "overwhelming majority of courts"); Dale, 505 B.R. at 12 (noting that the Logan decision is "consistent with the great weight of authority interpreting the application of § 1306(a)(1) . . . ."); see also, In re Gilbert, 526 B.R. 414 (Bankr. N.D. Ga. 2015).

[12] In re Taylor, 523 B.R. 915 (Bankr. S.D. Ga. 2014) (finding that insurance proceeds received more than 180 days after the petition date constitute property of a chapter 13 bankruptcy estate pursuant to section 1306(a)(1)); In re Roscoe, 2017 Bankr. LEXIS 1848 (Bankr. M.D. Fla. 2017) (same).

[13] There is virtually no caselaw directly on point. However, the case of Midi Music Center, Inc. v. Smith, 140 B.R. 904, 907 (Bankr. D.N.M. 1992) provides support for the decision in this case.  The court in Smith wrestled with a variety of issues. Id. at 905 ("This case has the stuff of which makes bankruptcy judges' nightmares: complicated facts, little or no case law on point, and a statute that doesn't seem to address the situation.").  Among other things, the court analyzed the treatment and flow of community property.
In Smith, a wife (Ruth) filed a chapter 13 bankruptcy case first.  Then, while that case was pending, her husband (Gary) filed his own chapter 7 case.  Then, during the chapter 7 case, Ruth's chapter 13 case was dismissed. Given these facts, the court held that when Ruth filed her chapter 13 case first, "[u]nder the operation of § 541(a)(2), all community property passed into her bankruptcy estate." Id. at 907.  As a result, Gary's bankruptcy case "arguably could not include the community property which was already included in Ruth's estate." Id.  But then Ruth's chapter 13 case was dismissed and, therefore, the court stated that once Ruth's "first chapter 13 petition was dismissed, the community property revested in the entity in which the property was vested immediately before the commencement of the case. § 349.  The community property would thus be revested in the community.  However, Gary had filed his petition by that time, listing all community property. **Therefore, the community property must have passed into his bankruptcy estate**." Id. (emphasis added).

did so on April 3, 2019.

Therefore, for both independent reasons, the Court concludes that the Camry (and the other community property) became property of the bankruptcy estate in this chapter 13 case on that date. As a result, as of that date, TMCC had an allowed secured claim which the Debtor may (potentially) modify in a chapter 13 plan.

### IV.    Conclusion.

Accordingly, the Court grants the request of the Trustee to deny confirmation of the pending chapter 13 plan. At the time the Debtor proposed the plan, the Camry and other community property had not yet vested in her bankruptcy case. However, the request of the Trustee to dismiss the case is denied. The Debtor should file a new proposed plan within thirty days.

Date: July 17, 2020

Wayne Johnson
United States Bankruptcy Judge